IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASPER L. CABE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-122-STE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further consideration consistent with this Memorandum Opinion and Order.

### I.  PROCEDURAL BACKGROUND

On October 25, 2016, Mr. Cabe applied for disability insurance benefits alleging a disability beginning August 5, 2016. (TR. 15). Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable

decision. (TR. 15-27). The Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. (TR. 1-3).

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that, although Mr. Cabe worked after his alleged onset date, that work had not risen to the level of substantial gainful activity as defined in the regulations. Thus, the ALJ proceeded to the second step where he determined Mr. Cabe had severe impairments, including degenerative joint disease and degenerative disc disease. The ALJ found Mr. Cabe's depression to be nonsevere. (TR. 17-18).

At step three, the ALJ considered whether Mr. Cabe's impairments were severe enough to meet the requirements of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR. 19). The ALJ considered the Listings 1.02, Major Dysfunction of a Joint and 1.04, Disorders of the Spine, and determined the medical evidence of record did not demonstrate that Plaintiff's severe impairments met or equaled either listing. (TR. 19-20).

At step four, the ALJ concluded that Mr. Cabe retained the residual functional capacity (RFC) to stand/walk two hours in an eight-hour workday; sit eight hours in an eight-hour work day; lift/carry ten pounds frequently and up to twenty pounds occasionally. The ALJ further found Mr. Cabe could not climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs. Postural limitations included the ability to occasionally balance, bend, stoop, kneel, crouch or crawl. (TR. 20-21).

With this RFC, the ALJ concluded that Plaintiff could not perform his past relevant work. (TR. 24). But based on the testimony of the vocational expert (VE), the ALJ determined there were other jobs existing in sufficient numbers in the national economy that Mr. Cabe could perform. Given the limitations identified by the ALJ in a series of hypothetical questions, the VE identified three sedentary, unskilled jobs from the Dictionary of Occupational Titles that a hypothetical person with Plaintiff's impairments could perform: Call Out Operator, Charge Account Clerk and Document Preparer. (TR. 25). At step five, the ALJ found the VE's testimony to be consistent with the information in the Dictionary of Occupational Titles and adopted the VE's testimony, concluding Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 25-26).

## III.   ISSUES PRESENTED

Mr. Cabe raises three propositions of error on appeal. First, he contends the ALJ erred at step two in failing to properly consider all of Mr. Cabe's impairments. Second, Mr. Cabe contends the ALJ's step five analysis was faulty. Finally, Mr. Cabe contends the ALJ erred in evaluating the consistency of the medical records with Mr. Cabe's testimony. (ECF No. 24:6-14).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct.

3

1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS

### A. Step Two

At step two, Plaintiff alleges the ALJ erred in failing to: (1) conclude that Plaintiff suffered from a "severe" mental impairment[1] and (2) assess the severity of impairments involving Plaintiff's shoulders and hand. (ECF No. 24:6-9).[2] The Court finds no reversible error at step two.

The issue at step two is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 156, (1987) (O'Connor, J., concurring)). If an

---

[1] Specifically, Plaintiff alleges that the ALJ erred in concluding that Plaintiff's depression was not severe and that he did not suffer from more than a "mild" limitation in one area of mental functioning, as assessed by the ALJ pursuant to 20 C.F.R. § 404.1520a. *See* ECF No. 24:6-9; *see infra*.

[2] In this proposition of error, Mr. Cabe also alleges that the ALJ failed to consider the combined effect of these impairments throughout the remainder of the disability evaluation. (ECF No. 24:8-9). The Court will discuss this allegation separately, as it does not directly relate to step two.

4

ALJ deems at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

At step two, the ALJ determined that Mr. Cabe: (1) suffered from "severe" degenerative joint disease and degenerative disc disease; (2) exhibited only "mild" limitations in the four areas of mental functioning;[3] and (3) did not suffer from "severe" depression. (TR. 17-18). Following the step two findings, the ALJ continued to perform the five-step sequential disability evaluation as it pertained to Mr. Cabe. (TR. 19-26). Thus, any error in the ALJ's failure to conclude that the depression was severe, or to make a severity determination on Plaintiff's hand and shoulder impairments, was harmless. *See supra*.

**B. Steps Four and Five**

The rationale behind the application of harmless error at step two is that "*all* medically determinable impairments, severe or not, must be taken into account at those later steps [of the sequential evaluation]." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing

---

[3] At step two, the ALJ follows a "special technique" to evaluate the severity of an individual's mental impairments. *See* 20 C.F.R. § 404.1520a(a). This technique requires the ALJ to rate the degree of functional limitation in four areas: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c) (2018).

the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*"). Mr. Cabe alleges that the ALJ failed to consider the effects of his depression, anxiety, and hand and shoulder impairments when formulating the RFC, as evidenced by his ignoring certain evidence. (ECF No. 24:6-9). As a result, Plaintiff alleges error at step five. (ECF No. 24:6-11). The Court agrees.

### 1. Error in the ALJ's Consideration of Plaintiff's Mental Impairment

On February 1, 2016, Norma Findahl, licensed social worker, evaluated Plaintiff's mental health, screening him for depression and anxiety. (TR. 435-443). Plaintiff scored "40" on the Beck Depression Inventory and scored "32" on the Beck Anxiety Inventory. (TR. 443). Ms. Findahl noted that these scores indicated "extremely severe depression" and "severe" anxiety. (TR. 443). The same day, psychiatrist Linda Cummings diagnosed Plaintiff with Depressive Disorder and prescribed medication. (TR. 448-449). Dr. Cummings continued to treat Plaintiff for depression, noting that on September 6, 2016, and December 9, 2016, Plaintiff had been again screened for depression, and had tested "positive." (TR. 453, 456).

At step two, the ALJ concluded that Plaintiff's depression was not severe. (TR. 18). In doing so, the ALJ relied on findings from the February 1, 2016 visit, which noted that Plaintiff:

- could recall a history of things that caused him to feel depressed;
- was involved in leisure and recreation activities;
- was cooperative, had average eye contact, and was goal oriented;

- reported being able to perform household chores, prepare meals, and complete hygiene; and

- occasionally uses marijuana and/or methamphetamine.

(TR. 18).

In assessing the RFC, the ALJ obviously believed that Plaintiff suffered no functional limitations relating to any mental impairment. The ALJ was entitled to reach this conclusion, but according to Mr. Cabe, the ALJ erred at step four by failing to consider the effect of Plaintiff's depression on the RFC; specifically alleging that the ALJ ignored: (1) the Anxiety and Depression screening scores from the February 1, 2016 visit and (2) the diagnosis of and treatment for depression during the entire disability period. The Court agrees with Mr. Cabe.

At step four, in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. *See* 20 C.F.R. §§ 404.1545(a)(2). The SSA has specifically stated that the criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." Social Security Ruling 96–8p, 1996 WL 374184, at *4 (July 2, 1996).

Here, in evaluating Plaintiff's RFC, the ALJ made only one reference to Plaintiff's mental impairment(s) when the ALJ acknowledged, then rejected, findings from State Agency psychologists, Drs. Sally Varghese and Stephen Scott. (TR. 23-24). Both

7

psychologists had reviewed the February 1, 2016 records from the Pawnee Indian Health Center, yet they both concluded that "insufficient evidence" existed to reach a finding of disability. *See* TR. 91-92, 103-104. The ALJ rejected their opinions, stating:

> [N]either assessment considered the maximum mental activities Mr. Cabe could perform. More to the point, the evidence submitted at the hearing level reveals medically determinably impairments; however, they are not severe at Step 2, as noted above.

(TR. 24). In *Wells v. Colvin*, 727 F.3d (10th Cir. 2013), the Tenth Circuit Court of Appeals condemned this type of step four analysis, stating:

> "[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not. Here, after stating his conclusion that [the plaintiff's] mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." He then reiterated his conclusion that the mental impairments were non-severe. The language used suggests that the ALJ may have relied on his step-two findings to conclude that [the plaintiff] had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

*Wells*, 727 F.3d at 1068–69 (internal citations omitted).

The ALJ stated that the State Agency psychologists failed to consider "the maximum mental activities Mr. Cabe could perform." (TR. 24). But aside from the findings at step two regarding Plaintiff's degree of limitations in the four functional areas, the ALJ failed in his analysis. Instead, the ALJ simply found that although Mr. Cabe suffered from a "medically determinable [mental] impairment," it was "not severe at Step Two as noted above." (TR. 24). This finding, alone, was insufficient at step four, because "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 at 1065. The ALJ was

8

required to consider the effects of all of Plaintiff's medically determinable impairments, which would include Plaintiff's depression. Yet instead, the ALJ did precisely what the Tenth Circuit condemned in Wells—relying on his step two finding that the depression was not severe as a substitute for a more specific analysis. Remand is warranted for a reconsideration of the effect of Mr. Cabe's depression, along with any other medially determinable impairments, at step four.

### 2. Error in the ALJ's Consideration of Plaintiff's Physical Impairments

The record contains evidence that Plaintiff was treated by various medical practitioners at the Pawnee Indian Health Center from December 2014-June 2018. (TR. 410-650, 672-726, 759-940). "Chronic problems" noted on various treatment records at this facility include a fracture of Plaintiff's left hand/first metacarpal bone and a "supraspinatus tear" on his left side (rotator cuff) which was confirmed through an MRI and resulted from a fall in October 2014. (TR. 412, 437, 469, 479, 593). On November 17, 2016, Dr. David Dotson discussed a 2015 surgery on Plaintiff's shoulder as well as an accident in 2000 involving both of Plaintiff's forearms being crushed which resulted in "a severe injury to his right forearm and his left forearm and wrist and hand." (TR. 591, 593). According to Dr. Dotson, these injuries: (1) caused Plaintiff to suffer weakness and (2) would result in occupational limitations involving gripping, lifting, and carrying for at least one year. (TR. 410).

Mr. Cabe alleges that the ALJ improperly ignored Dr. Dotson's opinion which resulted in a faulty RFC and faulty hypothetical to the VE, upon which the step five

findings are based. (ECF No. 24:3, 6, 8-10).[4] The Court agrees with Plaintiff regarding the ALJ's failure to consider the evidence but makes no findings on whether the error had impacted the RFC or the findings at step five.

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 404.1527(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. For example, in evaluating a treating physician's opinion, the ALJ must follow a two-pronged analysis. First, the ALJ must determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). This analysis, in turn, consists of two phases. First, an ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 2 (July 2, 1996) (SSR 96-2p) (internal quotations omitted).

If controlling weight is declined, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to

---

[4] Plaintiff refers to Dr. Dotson as "Dr. David Morton, DO." (ECF No. 24:3). The Court presumes this is a typographical error, based on a misreading of the physician's somewhat illegible signature. See TR. 410. Based on Plaintiff's citations to the record, it is clear that Plaintiff is referring to Dr. Dotson's opinion.

10

which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.[5]

Plaintiff alleges that Dr. Dotson qualified as a "treating physician" and that the ALJ erred by ignoring Dr. Dotson's opinion. Without determining whether Dr. Dotson qualified as a "treating physician," the regulations clearly mandate that the ALJ should have considered his opinion. The physician opined limitations involving Plaintiff's shoulders and hand which could arguably conflict with his ability to perform the jobs the ALJ relied on at step five. But the Court need not assess whether a conflict exists; it is enough that the ALJ committed legal error by completely ignoring Dr. Dotson's opinion when evaluating the medical evidence and determining Plaintiff's RFC. On remand, the ALJ must evaluate Dr. Dotson's opinion and the effect, if any, on Plaintiff's ability to work.

### C. Remaining Assertion of Error

Mr. Cabe also argues that the ALJ erred in failing to consider his subjective allegations, including his pain. (ECF No. 24:11-14). The ALJ need not consider this issue in light of the remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected

---

[5] Mr. Cabe's application for benefits was filed in 2016. *See* Tr. 15. As a result, the ALJ's review of medical opinions in this case is governed by 20 C.F.R. § 404.1527. For claims filed after March 27, 2017, the Commissioner is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only articulate how persuasive he finds the medical opinion. *See* 20 C.F.R. § 404.1520c(b).

11

by the ALJ's treatment of this case on remand."); *Seger v. Saul*, 2020 WL 4905069, at *6 (W.D. Okla. Aug. 20, 2020) (declining to address allegation that the ALJ improperly assessed subjective allegations, because remand was warranted on the issue involving ALJ's review of medical evidence); *Mando v. Saul*, 2020 WL 34409, at *6 (W.D. Okla. Jan. 2, 2020) (same).

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision. On remand, the ALJ shall properly assess the evidence of Plaintiff's depression and the opinion of Dr. Dotson in accordance with this Court's findings set forth above.

ENTERED on March 31, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE